265 P.2d 366

**JONES**

v.

**CITIZENS BANK OF CLOVIS.**

No. 5683.

Supreme Court of New Mexico.

Jan. 7, 1954.

Lynell G. Skarda, Clovis, for appellant.

James L. Briscoe, Tucumcari, for appellee.

COMPTON, Justice.

Appellee, administratrix of the estate of E. E. Jones, her deceased husband, instituted this action for damages against appellant for its refusal to honor the intestate's checks drawn upon his account, and to recover the amount of his deposit, alleged to be detained by the bank.

On February 3, 1950, Cash Ramey, a customer of the bank, brought to the bank a draft payable to himself for $3000 to be deposited to his credit. A teller, to whom the draft was presented, inadvertently deposited the funds to the credit of one C. A. Davis, who likewise was a patron of the bank. The error was not discovered until March 2 following, when Mr. Ramey found that his account with the bank was short that amount. In the meantime, on February 5, Davis gave E. E. Jones a check for $1100 which was thereafter on February 13, presented by him to the bank for payment. He received cash $100 and the balance of $1000 was deposited to his credit. The following day, February 14, Davis gave Jones another check for $800, which likewise was presented for payment and de-

posited to his credit. Jones had been a customer of the bank for several years and at the time he made the first deposit, his balance with the bank was $1,527.48.

■ The complaint alleges that while the said Jones had a credit with the bank of $2,412.38, he drew a check in amount of $270, payable to one C. W. D. Tanner. It alleges that payment of the Tanner check was wrongfully refused and dishonored by the bank, resulting in actual damages to the intestate. It is further alleged that due to the gross negligence, the wrongful and malicious acts of appellant in refusing to honor his check, the deceased being without fault, intestate suffered loss and damage to his credit, injured feelings, and mental anxiety which ultimately caused serious illness and resultant death. Jones died April 4, 1951, and two months later, June 2, 1951, Davis also died. These charges were put in issue by various denials and admissions. The error in making the deposit to Davis, is admitted. Appellant, however, sought to avoid the consequences of the act by charging that Jones had knowledge or should have known Davis did not have credit with the bank to pay the checks. It also charges that Jones and Davis entered into a conspiracy to defraud the bank after learning of the erroneous deposit to Davis. All disputed facts were tried to a jury. Two forms of verdict were submitted; one finding the issues in favor of appellee and assessing the amount of recovery at blank

dollars; and one finding the issues in favor of appellant. The verdict was in favor of appellee for the amount of the deposit and for $2500 damages. The verdict sets at rest all issues of fact if supported by substantial evidence, and in a determination of this question, we are limited to such facts as will support the verdict, disregarding all evidence to the contrary.

The point is raised that the court erred in submitting to the jury the issue of exemplary damages. The source of this argument is § 50–1005, 1941 Comp., which reads:

"No bank shall be liable to a depositor because of the nonpayment through mistake or error and without malice of a check which should have been paid unless the depositor shall allege and prove actual damage by reason of such nonpayment and in such event the liability shall not exceed the amount of damage so proved."

■ Without determining whether these mistakes fall within this statute, if malice is established by the evidence and we think it was, the statute is not applicable. Not only was the Tanner check dishonored but for a long period of time appellant steadfastly refused to honor any check on the Jones account, though he had a credit with the bank substantially in excess of the amount in controversy. It was only after appellee employed the services of an attorney that he was permitted to check on the account

and then only in such amount as to leave a balance of $1900. Further, the testimony discloses that the bank was attempting to hold Jones for the full amount of $3000 erroneously credited to the Davis account. We think these facts sufficiently establish malice within the meaning of the statute and the court was warranted in submitting the issue of exemplary damages to the jury. Ordinarily, "malice" means a wilful intent but such intent is not involved in the legal definition of the term "malice". When a wrongful act is done intentionally, without just cause or excuse, a legal definition of malice arises therefrom. And where wrongful acts are repeated as here, the jury has a right to infer the person committing them acted intentionally and without regard to the rights of the person to whom the acts are directed. It appears that appellee exhausted every possible remedy to avoid bringing this suit. The final demand by the bank was that she receive $800 and the bank $1100 in full settlement of the controversy. The offer was refused and the suit filed. Under these circumstances an inference of malice was justified by the jury. See Oddie v. National City Bank of New York, 45 N.Y. 735, 6 Am.Rep. 160; City National Bank of Selma v. Burns, 68 Ala. 267, 44 Am.Rep. 138; Berea Bank & Trust Co. v. Mokwa, 194 Ky. 556, 239 S.W. 1044; 25 C.J.S., Damages, § 63; Davis v. Standard National Bank, 50 App.Div. 210, 63 N.Y.S. 764.

It is argued that the verdict is confusing since it is not clear whether the $2500 award was actual or exemplary damages. This is unimportant as the parties were content to rely on a general verdict. Had the bank wanted an instruction distinguishing between actual and punitive damages or a different form of verdict, it was its duty to request such an instruction, or in some manner call the matter to the attention of the court.

Error is claimed in the refusal of the court to give certain requested instructions, particularly in its refusal to give an instruction on appellant's theory of the case. We have given careful consideration to the instructions and it clearly appears appellant's theory was fully covered by the instructions given. The refusal under such circumstances, is not error.

The court instructed the jury that Jones was presumed to have acted honestly in his dealings with the bank and that such presumptions must be overcome by clear and satisfactory evidence by appellant. Contention is made that in overcoming the presumption, a stronger degree of proof is required by the instruction than by a mere preponderance of the evidence. We do not so understand the instruction. It must be remembered that Jones was charged with fraudulent conduct in his dealings, and the instruction related to that issue. As we understand the rule, all persons are presumed

to act honestly, in good faith, and without fraud. To preponderate against this presumption, the evidence should be clear and satisfactory. The correct rule is found at 31 C.J.S., Evidence, § 126, and at 37 C.J.S., Fraud, § 114.

■ The bank offered Jones credit of $3000 and more while his funds were tied up, which offer was refused. It is contended that such refusal is a bar to recovery of damages. This is on the theory that an injured party must use diligence to mitigate the damages. Unquestionably, this is the correct rule, however, it cannot be construed as to compel appellee to accept credit under the facts prevailing in this case; in one breath being offered credit, and in another being charged with fraud. Under the circumstances in which Jones found himself at the time, acceptance or rejection of an offer of credit is to be measured by those considerations which would govern the acts of a reasonably prudent person under like circumstances. Moreover, no proper exception was taken to the court's instruction on this question.

■ Jones had suffered from a physical ailment for sometime prior to making the deposits, and shortly thereafter, his condition grew progressively worse. He talked many times to his attending physician about his financial difficulty caused by having his check dishonored and his funds tied up. He was unable to pay hospital bills and furniture from the home was sold to raise money to support the family. His wife, who previously had never worked away from home, was forced to seek manual labor to sustain the family. The attending physician, called by appellee, testified that worry over financial conditions adversely affected his health and thus hastened his death. Objection is made that the testimony of the expert in this respect is hearsay. We think the evidence was admissible. The witness did not relate what the deceased had told him but rather testified that worry, in his opinion, reduced his life's expectancy by several years. If we should be in error in our conclusion, and we entertain no such doubt, appellant is in no position to complain, because upon cross-examination he led the witness into detailing conversations between Jones and himself, upon which his opinion was based.

■ Appellee has moved for an award of damages, pursuant to the provisions of Rule 17(3) our Rules of Civil Procedure, asserting that the appeal was taken for delay and that delay has been occasioned thereby. We do not so appraise the appeal, and the motion will be denied.

The judgment will be affirmed, and it is so ordered.

SADLER, LUJAN and SEYMOUR, JJ., concur.

McGHEE, C. J., not participating.